UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EFREN LOPEZ-GAMBOA, | ) |
| Petitioner, | ) CASE NO. C05-940-JLR-MJB |
| v. | ) |
| RICHARD MORGAN, | ) REPORT AND RECOMMENDATION |
| Respondent. | ) |

## INTRODUCTION AND SUMMARY CONCLUSION

Petitioner is a state prisoner who is currently incarcerated at the Washington State Penitentiary in Walla Walla, Washington.  Petitioner, who is under the jurisdiction of the Indeterminate Sentence Review Board ("the Board"), has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from the sentences imposed by the Board following his 1983 convictions in Snohomish County Superior Court.  Respondent has filed an answer to the petition together with relevant portions of the state court record.  Petitioner has filed a response to respondent's answer.  This Court, having reviewed the entirety of the record, hereby concludes that no evidentiary hearing is necessary, that petitioner's petition should be denied, and that this action should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural history underlying petitioner's claims is lengthy and complex.

REPORT AND RECOMMENDATION
PAGE - 1

However, the Washington Supreme Court summarized that history in its February 24, 2005, Ruling Conditionally Dismissing Personal Restraint Petition. As this Court's review of the record establishes that the Supreme Court's summary constitutes an accurate recitation of the facts relevant to resolution of petitioner's federal habeas petition, this Court adopts that summary for purposes its review:

> Efren Lopez Gamboa was convicted in 1983 of first degree felony murder, second degree theft, first degree robbery, first degree burglary, and unlawful imprisonment. The murder and theft convictions stemmed from an incident separate from the one leading to the robbery, burglary, and unlawful imprisonment convictions. The trial court set a maximum term of 40 years each for the robbery and burglary convictions and five years for the unlawful imprisonment conviction, and recommended that those terms be served concurrently. The court then set a maximum term of life for the murder and five years for the theft and recommended that those two terms be served concurrently to each other and consecutively to the three other terms. The Indeterminate Sentencing Review Board initially set minimum terms of 72 months (60 months mandatory) for the robbery, 99 months (60 months mandatory) for the burglary, and 120 months (60 months mandatory) for the unlawful imprisonment, all to run consecutively.[1] The Board also set a minimum term of 33 months for the theft, directed that term to run concurrently with the sentence on the murder conviction, and determined, in agreement with the trial court's recommendation that the sentences on those two charges should run consecutively to the other three.[2]
>
> In 1988, the Board, in an effort to make Mr. Gamboa's sentence consistent with the standards of the Sentencing Reform Act (SRA) pursuant to RCW 9.95.009, reduced the minimum terms for the robbery and burglary convictions to 60 months each, for the unlawful imprisonment to 12 months, and for the theft to six months. It also continued the consecutive sentence structure it had previously imposed and articulated its reasons for doing so. In 1991, after the Board obtained authority to establish a minimum term for the murder conviction, *see* RCW 9.95.116, it set Mr. Gamboa's minimum sentence on that conviction at 410 months, the high end of the calculated SRA standard range. At that time, the Board assigned an SRA offender score of six to the murder.
>
> In 2000, Mr. Gamboa wrote to the Board challenging certain aspects of his sentence, including the calculation of his offender score and the running of the

---

[1] [Washington Supreme Court Footnote 1] The documents before me do not explain the discrepancy between the five-year maximum and 120-month minimum on the unlawful imprisonment conviction. That part of Mr. Gamboa's sentence is no longer at issue, however.

[2] [Washington Supreme Court Footnote 2] The Board did not then have authority to set a minimum term for the murder conviction. Laws of 1951, ch. 238; *In re Stanphill*, 134 Wn.2d 165, 173 n.5, 949 P.2d 365 (1998).

REPORT AND RECOMMENDATION
PAGE - 2

murder and theft sentences consecutively to the other three sentences. He complained, among other things, that the Board had improperly counted his crimes separately in calculating his offender score. In its response in June 2000, the Board disagreed that Mr. Gamboa's crimes constituted the "same criminal conduct" for offender score purposes. It noted, however, that it had reduced Mr. Gamboa's offender score from six to five in 1997, but that his minimum term for the murder remained within the adjusted scoring range.[3] In response to a further complaint, the Board in August 2000 disagreed that it had improperly run the sentence for theft and murder consecutive to the other sentences. And the Board noted that it had agreed that the robbery, burglary, and unlawful imprisonment constituted the same criminal conduct and had adjusted Mr. Gamboa's offender score accordingly.

Mr. Gamboa filed a personal restraint petition in the Court of Appeals challenging the Board's sentencing decisions. That court transferred the petition to this court. In his petition, Mr. Gamboa argued, among other things, that the Board had miscalculated his offender score and had improperly run the murder and theft sentences consecutive to the other sentences. He also complained that the Board had not yet corrected his offender score to reflect that the robbery, burglary, and unlawful imprisonment constituted the same criminal conduct.

This Court dismissed the petition on July 25, 2001, determining that the Board properly imposed consecutive sentences and correctly treated the theft and murder as separate crimes in calculating the offender score. No. 71169-1.[4] The court also observed that Mr. Gamboa failed to show that the Board had not corrected his offender score to reflect the treatment of the robbery, burglary, and unlawful imprisonment as the same criminal conduct.

Evidently believing that the Board still had not corrected his offender score, Mr. Gamboa again complained. In December 2002, the Board informed Mr. Gamboa that it had consulted the Sentencing Guideline Commission and that the Commission believed that the original score, rather than the amended score the Board had assigned in 1997, was correct. But the Board said that, "[i]n any event, we will leave your offender score at 5 as we scored it in 1997." Ex. PRP-4 (Aug. 9, 2004)).

Mr. Gamboa filed this personal restraint petition directly in this court raising several sentencing arguments, including, again, that the Board has miscalculated his offender score.[5] In its response, the Board raised only procedural challenges to the

---

[3] [Washington Supreme Court Footnote 3] The Board in 1997 reduced the minimum term for the murder to 382 months.

[4] [Washington Supreme Court Footnote 4] Mr. Gamboa also raised challenges to his convictions, which this court rejected.

[5] Petitioner presented the following issues to the Washington Supreme Court for review in his personal restraint petition:

   a.   The ISRB violated petitioner's due process and equal protection constitutional

REPORT AND RECOMMENDATION
PAGE - 3

>   petition. But because it appeared the Board still may have miscalculated Mr. Gamboa's offender score, I directed the Board to file a supplemental response addressing this issue as well as the merits of any other issue that the Board wished to address.
>
>   The Board has responded, and it concedes that Mr. Gamboa's correct offender score is four rather than five. It represents that within 30 days of this court's ruling on this personal restraint petition, it will administratively redetermine Mr. Gamboa's minimum term. The Board argues that other issues Mr. Gamboa raises are meritless.

(Dkt. No. 17, Ex. 28 at 1-4.)

After reviewing petitioner's claims, the Supreme Court concluded that, with the exception of petitioner's contention regarding the miscalculation of his offender score, the personal restraint petition was meritless. (*Id.*, Ex. 28 at 5.) Petitioner now seeks federal habeas review of his sentencing claims.

---

>   rights when the ISRB failed to correctly calculate petitioner's offender score.
>
>   b.  The ISRB violated petitioner's due process and equal protection constitutional rights when the ISRB failed to consider the SRA standard ranges as directed by RCW 9.95.009(2).
>
>   c.  The ISRB violated petitioner's double jeopardy constitutional protection when the ISRB enhanced petitioner's duration of confinement by counting the other current convictions and also ordering the sentences consecutively.
>
>   d.  The ISRB violated petitioner's due process and equal protection constitutional guarantees when the ISRB fixed petitioner's duration of confinement higher than terms set on others committing similar offenses.
>
>   e.  RCW 9.95.116 (SHB 1457) is ambiguous in that it can be discerned from its language that the legislature ordered the ISRB to fix the maximum and minimum duration of confinement.

(Dkt. No. 17, Ex. 22 at 9, 13, 17, 18 and 21.)

REPORT AND RECOMMENDATION
PAGE - 4

## GROUNDS FOR RELIEF

Petitioner presents the following five grounds for relief in his federal habeas petition:

1. The Indeterminate Sentence Review Board (ISRB) violated Mr. Lopez-Gamboa's due process and equal protection constitutional rights when the ISRB unlawfully augmented Mr. Lopez-Gamboa's duration of confinement.

2. The ISRB violated petitioner's due process and equal protection constitutional guarantees under the Fourteenth Amendment to the United States Constitution when the ISRB abused its discretion in not following RCW 9.95.009(2) and RCW 9.95.116.

3. The ISRB violated Mr. Lopez-Gamboa's due process and equal protection constitutional guarantees under the Fourteenth Amendment to the United States Constitution when the ISRB failed to fix a maximum and a minimum duration of confinement as required under RCW 9.95.116.

4. The ISRB violated Mr. Lopez-Gamboa's due process and equal protection constitutional guarantees under the Fourteenth Amendment to the United States Constitution when the ISRB fixed petitioner's duration of confinement higher than the terms set on others who committed similar crimes, and who are similarly situated.

5. The ISRB violated Mr. Lopez-Gamboa's double jeopardy constitutional protections under the Fifth and Fourteenth Amendments to the United States Constitution when the ISRB counted the second degree theft as a separate crime than the murder conviction.

(Dkt. No. 5, Memorandum in Support of Petition at 4, 6, 10, 12 and 14.)

## DISCUSSION

Respondent concedes that petitioner has properly exhausted his five grounds for federal habeas relief by presenting those grounds to the Washington Supreme Court for review. Respondent argues, however, that three of petitioner's five grounds for federal habeas relief are time-barred, that all five of petitioner's habeas claims merely present state law sentencing issues and therefore do not present cognizable grounds for federal review, and that all of petitioner's claims fail for lack of merit.

### Statute of Limitations

Respondent asserts in his answer to the petition that petitioner's second, third, and fifth grounds for federal habeas relief are all barred by the one-year federal statute of limitations because

REPORT AND RECOMMENDATION
PAGE - 5

petitioner's petition was not timely filed within the requirements of 28 U.S.C. § 2244(d)(1)(D).

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, Sec. 105 (1996), which worked substantial changes in the law of federal post-conviction relief.  One of those changes was to adopt a one-year statute of limitations for § 2254 actions. *See* 28 U.S.C. § 2244(d)(1).

Section 2244(d)(1) states that the one year limitations period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The one year limitations period is tolled for any properly filed collateral state challenge to the pertinent judgment or claim.  28 U.S.C. § 2244(d)(2).  The statute of limitations is also subject to equitable tolling. *Calderon v. United States District Court (Beeler),* 128 F.3d 1283, 1288 (9th Cir. 1997)*, overruled in part on other grounds by, Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998)(en banc).  However, the Ninth Circuit has made clear that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon*, 128 F.3d at 1288 (citing *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1997)).

Because petitioner's claims constitute challenges to the actions of the Board, the limitations period is properly calculated by applying § 2244(d)(1)(D). *See Redd v. McGrath*, 343 F.3d 1077 (9th Cir. 2003).  Under § 2244(d)(1)(D), the starting date for the calculation of the statute of

REPORT AND RECOMMENDATION
PAGE - 6

limitations is the date the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner asserts in his second ground for relief that the Board abused its discretion in fixing his duration of confinement with respect to his murder conviction. According to petitioner's own assertions, this claim arose out of the Board's decision of October 25, 1988, in which the Board maintained petitioner's consecutive sentence structure, and the Board's decision of December 9, 1991, in which the Board set petitioner's minimum term with respect to his murder conviction. It is therefore reasonable to conclude that petitioner could have learned of the factual predicate for his second ground for relief, through the exercise of due diligence, not later than December, 1991.

Petitioner asserts in his third ground for relief that the Board failed to fix a maximum and a minimum duration of confinement as required under RCW 9.95.116 (SHB 1457). Pursuant to RCW 9.95.116, the Board was required to fix petitioner's minimum term with respect to his murder conviction by July 1, 1992. The Board set a minimum term with respect to petitioner's murder conviction, in accordance with SHB 1457, on December 9, 1991. (Dkt. No. 17, Ex. 14.) It is therefore reasonable to conclude that petitioner could have learned of the factual predicate for his third ground for relief, through the exercise of due diligence, not later than December, 1991.

Petitioner asserts in his fifth ground for relief that the Board violated his right to be free from double jeopardy when it counted his second degree theft conviction and his murder conviction as separate crimes for purposes of calculating his offender score. Petitioner has provided the Court with a document, apparently prepared in January 1989, which indicates how petitioner's various offenses were scored for purposes of calculating his offender score with respect to his first degree murder conviction. (Dkt. No. 5, Appendix L.) That document makes clear that the Board had scored petitioner's theft conviction as a separate offense. It is therefore reasonable to conclude that petitioner could have learned of the factual predicate for his fifth ground for federal habeas relief, through the exercise of due diligence, not later than January 1989.

Petitioner argues in his reply brief that the alleged violations are continuing. Nonetheless, it

REPORT AND RECOMMENDATION
PAGE - 7

is evident that petitioner could have, through the exercise of reasonable diligence, discovered the factual predicate for the above claims well before the AEDPA was signed into law. Accordingly, the limitations period for those claims began to run on April 24, 1996, the date the AEDPA was signed into law. Thus, petitioner had until April 23, 1997, to file a federal habeas petition asserting the above claims.

The record reflects that petitioner, over the years, has filed a great many personal restraint petitions in the state courts. (Dkt. No. 17, Ex. 21.) Thus, as noted by respondent, the federal statute of limitations was tolled for a substantial period of time while those collateral attacks were pending. However, the record before this Court indicates that petitioner did not have any collateral attack pending in the state courts between December 4, 2002 and August 9, 2004. (*See* Dkt. No. 17, Ex. 21.) Thus, the statute of limitations ran for an uninterrupted period of time between those dates, a period far exceeding one year. It is therefore clear that the statute of limitations expired with respect to petitioner's second, third, and fifth grounds for relief prior to the date petitioner signed his federal habeas petition, May 9, 2005. Petitioner makes no showing that he is entitled to equitable tolling of the limitations period. Accordingly, petitioner's second, third, and fifth grounds for relief should be dismissed as time barred.

<u>Failure to State a Cognizable Claim for Relief</u>

Respondent also argues in his answer to petitioner's federal habeas petition that all five of petitioner's grounds for relief present issues of state sentencing law only and are therefore not cognizable in these federal habeas proceedings.

A writ of habeas corpus may issue only upon a finding that a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal habeas relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)(citing *Pulley v. Harris*, 465 U.S. 37, 41 (1983)). And, state courts are the ultimate

REPORT AND RECOMMENDATION
PAGE - 8

expositors of their own laws. *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989), *cert. denied*, 110 S.Ct. 344 (1989)(citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 n. 11)).

As the United States Supreme Court reminds us, it is not the province of the federal court when considering a petition for writ of habeas corpus to decide whether the "state sentencer" committed an error under state law in imposing sentence. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992)(citing *Lewis v. Jeffers*, 497 U.S. at 780). Rather, this Court must decide whether the sentence imposed was "so arbitrary and capricious as to constitute an independent due process . . . violation." *Id*.

In *Makal v. Arizona*, 544 F.2d 1030 (9th Cir. 1976), the Ninth Circuit explained that "[s]o long as the type of punishment is not based upon any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violations of state statutes are matters of state concern." *Id*. at 1035.

Although petitioner alleges in his petition that the Board's actions violate constitutional principles, the arguments set forth in support of his claims effectively challenge whether the Board properly applied state sentencing laws in calculating his offender score, setting his minimum term, and structuring his sentence. These are all matters of state law which are not subject to review in federal habeas proceedings.

While it appears that petitioner's federal habeas grounds effectively present only state law sentencing issues for review, the Court acknowledges that petitioner's fourth and fifth grounds for relief, asserting violations of the Equal Protection Clause and the Double Jeopardy Clause, arguably present cognizable issues for federal habeas review. Accordingly, this Court will briefly address the substance of those two grounds.

<u>Equal Protection</u>

Petitioner asserts in his fourth ground for federal habeas relief that the Board violated his right to equal protection when it fixed his duration of confinement higher than the terms set on others who committed similar crimes and who are similarly situated. In his petition, petitioner, in

REPORT AND RECOMMENDATION
PAGE - 9

support of his equal protection argument, merely cites to the cases of other prisoners whom he asserts committed similar crimes but received lesser sentences.

In his brief in response to respondent's answer, petitioner expands his equal protection argument to allege for the first time that the Board's decisions were racially biased and/or ethnically motivated. (*See* Dkt. No. 18 at 7-8.) Petitioner again cites to the cases of other offenders, convicted of similar offenses, whom he contends received guideline range sentences from the Board whereas he received an exceptional consecutive sentence from the Board. Petitioner identifies in his argument two Caucasian offenders whom he claims received guideline range sentences from the Board for similar offenses. He also identifies two Hispanic offenders who committed similar crimes against Hispanic victims and also received guideline range sentences from the Board.

The Equal Protection Clause requires that all persons similarly situated be treated alike. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Equal protection claims concerning post-conviction sentencing and confinement are reviewed under the rational basis test. *McQueary v. Blodgett*, 924 F.2d 829, 834 (9th Cir. 1991); *Foster v. Washington State Board of Prison Terms and Paroles*, 878 F.2d 1233, 1235 (9th Cir. 1989). Under the rational relationship test, a habeas petitioner has the burden of alleging facts sufficient to establish "a prima facie case of uneven application." *McQueary*, 924 F.2d at 835. As the Ninth Circuit explained in *McQueary*, "a mere demonstration of inequality is not enough. . . . There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises." *Id*.

The facts alleged by petitioner do not establish a prima facie case of uneven application of state sentencing law. Instead, the facts suggest that the Board exercised its discretion in each of the cited cases, as it is required to do under state law, to set the duration of confinement for the individual offenders based upon its review of both the offense and the offender. *See* RCW 9.95.170. That these individual reviews may have resulted in different sentences does not implicate federal constitutional concerns. As noted by the Ninth Circuit in *McQueary*, the Fourteenth

REPORT AND RECOMMENDATION
PAGE - 10

Amendment "guarantees equal laws, not equal results." *McQueary*, 924 F.2d at 835 (quoting *Personnel Adm'r v. Feeney*, 442 U.S. 256, 273 (1979)). While petitioner has alleged that other offenders have received more favorable consideration from the Board, he has not established that the sentencing laws have been applied in a disparate manner. Accordingly, petitioner's equal protection claim must fail.

Double Jeopardy

Petitioner argues in his fifth ground for federal habeas relief that the Board violated his right to be free from double jeopardy when it counted petitioner's second degree theft conviction and his murder conviction as separate crimes.

The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after conviction, a second prosecution for the same offense after acquittal, and multiple punishments for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229 (1994), *citing North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Where cumulative sentences are imposed in a single criminal trial, the role of the Double Jeopardy Clause "is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

The test for determining whether separate punishments may be imposed for multiple offenses arising in the course of a single act or transaction was set forth in *Blockburger v. United States*, 284 U.S. 299 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . .

*Id.* at 304.

Petitioner's theft and murder convictions were distinct offenses requiring proof of different elements and different facts. Petitioner makes no showing whatever that he received multiple punishments for the same offense. Accordingly, petitioner's double jeopardy claim must also fail.

REPORT AND RECOMMENDATION
PAGE - 11

## CONCLUSION

Based upon the foregoing, this Court recommends that petitioner's federal habeas petition be denied and that this action be dismissed without prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 12th day of October, 2005.

MONICA J. BENTON
United States Magistrate Judge